IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNETTE WALKER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 12-6488 |
| INTERNATIONAL RECOVERY SYSTEMS, INC. & JEREMY CROSS, | : | |
| Defendants. | : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                         **JULY  8,  2013**

  Presently before this Court are Defendants, International Recovery Systems and Jeremy Cross' ("Defendants"), Motion for Judgment on the Pleadings, and Plaintiff, Lynette Walker's ("Plaintiff") Response in Opposition.  For the reasons set forth below, Defendants' Motion is denied.  However, upon further analysis, we *sua sponte* find that this dispute is not ripe for determination.  Consequently, Plaintiff's claims are dismissed without prejudice.

**I.  BACKGROUND**

  Plaintiff is an adult resident of Glenolden, Pennsylvania.  (Compl. ¶ 1.)  International Recovery Systems, Inc. ("IRS") is a Pennsylvania corporation with a principal place of business in Collingdale, Pennsylvania.  (Id. ¶ 3.)  IRS is in the business of collecting debts by repossessing automobiles.  (Id. ¶ 4.)  Plaintiff believes Jeremy Cross ("Cross") to be the owner of IRS.  (Id. ¶ 5.)

  Plaintiff was the owner of a 1997 Ford Expedition (the "vehicle") with a clear title and a

fair market value of $3,500. (Id. ¶ 7.) The vehicle was titled, registered and licensed in Pennsylvania. (Id. ¶ 8.) The vehicle was kept at Plaintiff's place of residence in Pennsylvania. (Id. ¶ 9.)

In the recent past, Plaintiff has received personal loans from Delaware Title Loans, Inc. ("DTL"), a Delaware corporation. (Id. ¶¶ 10, 34.) DTL offers automobile title loans, which are essentially loans secured against the borrower's car. (Id. ¶ 11.) Plaintiff received a loan from DTL with an interest rate of 357.36% A.P.R. by posting her automobile title as security for the loan. (Id. ¶ 12.) After Plaintiff was unable to make payments on the loan agreement, DTL ordered the repossession of Plaintiff's vehicle. (Id. ¶ 14.) DTL and IRS entered into an agreement whereby IRS would repossess Plaintiff's vehicle. (Id. ¶ 15.) On or about June 29, 2012, IRS repossessed Plaintiff's vehicle in Pennsylvania. (Id. ¶ 17.)

On November 16, 2012, Plaintiff filed suit against IRS and Cross (collectively "Defendants"). (Id.) Specifically, Plaintiff asserts that Defendants' repossession of Plaintiff's vehicle violated the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 ("FCEUA"); and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). (Id.)

After filing an Answer, Defendants moved for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Defs.' Mot. for J. on the Pleadings.) In this Motion, Defendants argue that Plaintiff's claims should be dismissed because she failed to add DTL, who Defendants claim is a necessary and indispensable party to the litigation. (Id. at 1.)

## II. STANDARD OF LAW

The doctrine of ripeness arises from Article III constitutional requirements that federal courts are only empowered to decide cases and controversies and from prudential concerns for not exercising jurisdiction. See Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 57 n. 18 (1993); Nextel Commc'ns of the Mid-Atlantic Inc. v. City of Margate, 305 F.3d 188, 192 (3d Cir. 2002) (citing Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 (3d Cir. 1988)). The purpose of the ripeness doctrine is to determine "whether a party has brought an action prematurely and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." Khodara Environmental, Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004). Thus, ripeness acts "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967) *overruled on other grounds*.

"Various considerations underpin the ripeness doctrine, including . . . whether the facts of the case are sufficiently developed to provide the court with enough information on which to decide the matter conclusively, and whether a party is genuinely aggrieved so as to avoid expenditure of judicial resources on matters which have caused harm to no one." Khodara, 376 F.3d at 196. "Ultimately, the case must involve 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" The Presbytery of N.J. of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1463 (3d Cir. 1994) (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). In analyzing ripeness, we "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court

3

consideration." Nextel, 305 F.3d at 193 (quoting Abbott Laboratories, 387 U.S. at 149).

## III. DISCUSSION

Considerations of ripeness are sufficiently important that the court must raise the issue *sua sponte* when the parties do not. Nextel, 305 F.3d at 192; Felmeister, 856 F.2d at 535. Raising the ripeness issue *sua sponte*, we now consider whether the "dispute is sufficiently concrete" to decide the matter conclusively. Khodara, 376 F.3d at 196.

The cornerstone of this litigation is the loan agreement between Plaintiff and DTL. Plaintiff's claims under the FDCPA, the PAFCEAU, the RICO Act and Defendants' liability therefrom, all hinge on the legality of the loan agreement.[1] In essence, Defendants' actions can only be considered malfeasance if the loan agreement was illegal and, therefore, void. If this is the case, Defendants would have had no right to repossess the vehicle because it did not belong to DTL.

Plaintiff relies heavily on Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616 (3d Cir. 2009) to support her claim that the underlying loan agreement between Plaintiff and DTL was illegal due to the usuriously high interest rates. (Compl. ¶ 13.) We find Plaintiff's reliance misplaced for several reasons. First, it is not the district court's prerogative to determine the validity of such a loan. The United States Supreme Court made abundantly clear in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) that unless the challenge is to an arbitration clause itself, the issue of the validity of a contract is considered by the arbitrator in the

---

[1]Specifically, the FDCPA and the PAFCEAU are violated by taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if there is *no present right to possession of the property* claimed as collateral through an enforceable security interest. 15 U.S.C. § 1692f(6)(A); 73 P.S. §2270.4 (emphasis added). Likewise, Plaintiff's RICO Act claims emanates from the alleged "*collection of unlawful debt*." 18 U.S.C. § 1962(c) (emphasis added).

4

first instance.[2]  Buckeye, 546 U.S. 445-46.

Second, Plaintiff argues that the choice of law analysis utilized in Kaneff, which mandated the application of Pennsylvania law to a Delaware loan, should apply here. Again Plaintiff's assertion is mistaken. In Vimar Seguros y Reaseguros v. M.V. Sky Reefer, 515 U.S. 528 (1995), the Supreme Court held that the choice-of-law decision is itself a matter for the arbitrators, and not the court, despite the petitioner's argument that a federal court must determine what law applies to a particular arbitration provision before referring the action to the arbitrators. Vimar, 515 U.S. 541.

Third, our case and Kaneff are factually inapposite. Here, we are faced with a plaintiff suing a repossession company under federal consumer protection statutes for the unlawful taking of property subsequent to Plaintiff's default on a loan of which Defendants were not a party. Kaneff involved the lender after the default and repossession of plaintiff's car. Thus, the relationship of the parties and the jurisdictional grounds are manifestly different in each case.[3]

Rather than compelling a finding that the loan agreement in this case is illegal, we believe that Kaneff and the Supreme Court's holdings in Buckeye and Vimar compel the opposite. The Supreme Court in Buckeye and Vimar placed the power firmly in the grasp of the arbitrator to

---

[2]In fact, the Third Circuit in Kaneff analyzed the Supreme Court's holding in Buckeye, and explicitly noted this pronouncement. See Kaneff, 587 F.3d at 621 (quoting Buckeye, 546 U.S. at 447).

[3]In Kaneff the Court sat in diversity, and stated "it is now black letter law that 'in an action based on diversity of citizenship jurisdiction, we must apply the substantive law of the state in which the District Court sat, including its choice of law rules.'" Kaneff, 587 F.3d at 621 (quoting Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). The Court then invalidated the Delaware loan agreement as illegal under Pennsylvania law. Id. However, in the case at hand, Plaintiff's claims are pursuant to federal statutes. Therefore, no choice of law concerns are present because state law plays no role in the interpretation of a federal statute. See Widmer v. Atchison, Topeka & Santa Fe Ry. Co., No. 90-3801, 1990 WL 171257, at *2 (E.D. Pa. Nov. 5, 1990); Lewis Tree Service, Inc. v. Lucent Tech. Inc., 239 F. Supp. 2d 322, 328 (S.D.N.Y. 2002).

decide what law to apply and the overall validity of the agreement. See Buckeye, 546 U.S. 445-46; Vimar, 515 U.S. 541. In light of these decisions, it is evident that an essential element of Plaintiff's claims is undetermined; namely, the validity of the loan agreement between Plaintiff and DTL. We are not the proper authority to make this determination. This decision is solely within the prerogative of the arbitrator. Consequently, we find that the facts of the case are not sufficiently developed to provide us with enough information to decide the matter conclusively, and Plaintiff's claims are not "fit" for judicial determination. Khodara, 376 F.3d at 196; Nextel, 305 F.3d at 193.

Finally, as a practical matter, we do not believe that the parties will suffer any hardship due to our dismissal of the action without prejudice. Plaintiff is not precluded from raising these claims against Defendants in the future. Rather, the legality of the loan between Plaintiff and DTL must first be decided by an arbitrator before proceeding with claims against Defendants. Additionally, our decision in this case will protect Defendants from the undue hardship of having to defend the legality of a loan agreement to which they are not a party. In sum, our finding that the matter is not ripe for determination places Plaintiff on the appropriate track to attain relief, if warranted.

## IV.    CONCLUSION

For the aforementioned reasons, we find that Plaintiff's claims are not fit for judicial decision and that the parties will not suffer hardship from our decision to dismiss the matter for ripeness reasons. Nextel, 305 F.3d at 193 (quoting Abbott Laboratories, 387 U.S. at 149).

An appropriate Order follows.